## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

Jennifer Rae Heglund and Jamie Lee Heglund,

                Plaintiffs,

v.

Aitkin County; City of Aitkin; City of Babbitt; City of Biwabik; City of Breitung; City of Chisholm; City of Cloquet; Cook County; City of Cook; Crow Wing County; City of Deer River; Douglas County; City of Duluth; City of Ely; City of Emily; City of Eveleth; City of Floodwood; City of Forest Lake; City of Gilbert; City of Grand Rapids; Hennepin County; City of Hermantown; City of Hibbing; City of Hill City; City of Hoyt Lakes; City of International Falls; Itasca County; City of Keewatin; Lake County; City of Leech Lake; City of Maple Grove; City of Minneapolis; City of Nashwauk; Norman County; City of Orono; Pine County; Ramsey County; City of Roseau; City of Sartell; Scott County; Sherburne County; City of St. James; St. Louis County; City of St. Paul; City of Two Harbors; City of Virginia; Washington County; Winona County; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1 - 600) acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does (1-30) acting in their individual capacity as officers, supervisors,

Civil File No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

staff, employees, independent contractors
or agents of the Minnesota Department of
Public Safety; and Entity Does (1-100)
including cities, counties, municipalities,
and other entities sited in Minnesota,

Defendants.

For Plaintiffs' Complaint, for which Plaintiffs demand trial by jury on all claims so triable, Plaintiff Jennifer Rae Heglund ("Jennifer") and Plaintiff Jamie Lee Heglund ("Jamie") (collectively referred to as "Plaintiffs") hereby state and allege as follows:

## INTRODUCTION

This is a case to redress the abuse of power by numerous law-enforcement personnel and public employees who illegally accessed the Minnesota Department of Public Safety's system for maintaining the personal, private information of Minnesota citizens. Officers and employees from approximately several different law-enforcement agencies and entities violated federal law, Minnesota and federal policy and the constitutionally and statutorily protected privacy rights of Plaintiffs Jennifer Heglund ("Jennifer") and Jamie Heglund ("Jamie"). Jennifer had her private personal information obtained or used approximately 446 times without a purpose permitted by the DPPA. Jamie had his private personal information obtained or used approximately 34 without a purpose permitted by the DPPA.

These personnel violated the federal Driver's Privacy Protection Act ("DPPA") and violated Plaintiffs' civil rights under 42 U.S.C. § 1983, by unlawfully accessing Plaintiffs' protected driver's license information without any legitimate purpose. More disturbing, these personnel, charged with protecting and serving the public, knowingly

abused their position of trust simply to satisfy their shallow desires to peek behind the curtain into the private lives of the Plaintiffs, without their knowledge or consent, and without ever informing them of their activities. In fact, they carried on these searches surreptitiously and concealed them from Plaintiffs and, presumably, from their supervisors and others.  Those charged with oversight of the system, including the Commissioners, concealed this from Plaintiffs by failing to ever notify Plaintiffs of these intrusions and violations, and concealed the extent of the violations from the general public.  The utter disregard for their privacy rights by law-enforcement personnel, public employees, and others caused Plaintiffs' emotional distress and a logical fear for their personal safety.

The State of Minnesota, itself, has found that at least 50% of all officers statewide are engaged in the use of this database for impermissible purposes, and therefore violating federal civil and criminal laws.  Moreover, the access permitted to law-enforcement officers, public employees, and others is easily obtained and makes highly private information available, including health information and social security numbers. Plaintiffs have no control over the Defendants obtaining their personal information, and impermissible and inappropriate obtaining has been deliberately concealed and conducted in a surreptitious fashion.  These Defendants are the window-peepers of the electronic data age.  Through lax policies and apathetic enforcement of the law, these officials and governmental units have caused direct damage to Plaintiffs, just as they have trampled upon the clear legislative protections of all citizens' right to feel secure in their privacy.

## General Background of Law and Facts

1.      This is an action for injunctive relief and money damages for injuries sustained when personnel from various entities in Minnesota illegally obtained Plaintiffs' private, personal and confidential driver's license information without a legitimate or permissible law-enforcement purpose or any other lawful purpose.

2.      These law-enforcement personnel, public employees, and others viewed and obtained Jennifer's private information approximately four hundred and forty-six times between 2003 and 2013.

3.      These law-enforcement personnel, public employees, and others viewed and obtained Jamie's private information approximately thirty-four times between 2006 and 2013.

4.      Attached to this Complaint as Exhibit A is a copy of an audit prepared by the Minnesota Department of Public Safety showing the obtainments of Jennifer's driver's license information by name, not by license plate number, with her driver's license number removed, and showing the "station," meaning the police department, sheriff's office, or other government entity through which the officer obtained her information.

5.      Attached to this Complaint as Exhibit B is a copy of an audit prepared by the Minnesota Department of Public Safety showing the obtainments of Jamie's driver's license information by name, not by license plate number, with his driver's license number removed, and showing the "station," meaning the police department, sheriff's office, or other government entity through which the officer obtained his information.

4

6.     Without legitimate, permissible reasons, these individuals obtained Plaintiffs' private information from Department of Vehicle Services' ("DVS") database or Bureau of Criminal Apprehension ("BCA") database.

7.     Upon information and belief, these individuals further impermissibly used or disclosed Plaintiffs' private information without a permissible purpose.

8.     Each unauthorized, use, disclosure, or obtainment of their private information, made without a permissible purpose and while acting under color of state and federal law, violated Plaintiffs' federal civil rights and constituted behavior prohibited by the federal constitution, federal statute, Minnesota statute, common law, and agency and departmental regulations prohibiting some or all of the conduct engaged in by Defendants in this case.

9.     Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments of the United States Constitution, 28 U.S.C. §§ 1331 and 1343(a)(3), the Driver's Privacy Protection Act ("DPPA") 18 U.S.C. § 2721 *et seq.*, and Minnesota common law invasion of privacy.

10.     The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

11.     This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

12.     The amount in controversy exceeds $75,000, excluding interests and costs.

5

**The Parties**

13.     Jennifer Rae Heglund is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

14.     Jamie Lee Heglund is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

15.     Defendant Aitkin County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

16.     Defendant Cook County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

17.     Defendant Crow Wing County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

18.     Defendant Douglas County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

19.     Defendant Hennepin County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

20.     Defendant Itasca County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

21.     Defendant Lake County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

22.     Defendant Norman County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

23.     Defendant Pine County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

24.     Defendant Ramsey County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

25.     Defendant Scott County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

26.     Defendant Sherburne County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

27.     Defendant St. Louis County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

28.     Defendant Washington County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

29.     Defendant Winona County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

30.     Defendant City of Aitkin is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

31.     Defendant City of Babbitt is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

32.     Defendant City of Biwabik is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

33.     Defendant City of Breitung is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

34.    Defendant City of Chisholm is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

35.    Defendant City of Cloquet is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

36.    Defendant City of Cook is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

37.    Defendant City of Deer River is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

38.    Defendant City of Duluth is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

39.    Defendant City of Ely is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

40.    Defendant City of Emily is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

41.    Defendant City of Eveleth is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

42.    Defendant City of Floodwood is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

43.    Defendant City of Forest Lake is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

44.    Defendant City of Gilbert is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

45.     Defendant City of Grand Rapids is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

46.     Defendant City of Hermantown is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

47.     Defendant City of Hibbing is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

48.     Defendant City of Hill City is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

49.     Defendant City of Hoyt Lakes is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

50.     Defendant City of International Falls is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

51.     Defendant City of Keewatin is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

52.     Defendant City of Leech Lake is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

53.     Defendant City of Maple Grove is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

54.     Defendant City of Minneapolis is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

55.     Defendant City of Nashwauk is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

9

56.     Defendant City of Orono is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

57.     Defendant City of Roseau is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

58.     Defendant City of Sartell is a statutory city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

59.     Defendant City of St. James is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

60.     Defendant City of St. Paul is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

61.     Defendant City of Two Harbors is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

62.     Defendant City of Virginia is a home rule charter city in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

63.     Defendants Entity Does (1-100) are various unknown municipalities as defined by Minn. Stat. § 466.01, subd. 1 that can be sued under Minn. Stat. § 466.01 *et seq.* or other statutes, and federal departments and agencies, which can be sued under 28 U.S.C. § 1346 or other statutes.

64.     Plaintiffs will refer to the entities named in paragraphs 12 to 64 above, along with the Entity Does, collectively as the "Defendant Entities" or "Entity Defendants."

65.     Defendants John and Jane Does (1-600), upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed and acting in their individual capacities as law-enforcement supervisors, officers or employees of the Defendant Entities or other federal, state, county or municipal entities in Minnesota.

66.     Plaintiffs will refer to the individual Defendants (with the exception of the "Commissioner Defendants," "Department of Public Safety Defendants" and "Supervisor Defendants" defined below), including John and Jane Does, collectively as the "Individual Defendants" or "Defendant Individuals."

67.     Plaintiffs will refer to the Defendants with supervisory authority over the Individual Defendants, including any John and Jane Does with such supervisory authority, collectively as the "Defendant Supervisors" or "Supervisor Defendants."

68.     Defendant Michael Campion ("Campion"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting in his individual capacity as the Commissioner of the Minnesota Department of Public Safety.

69.     Defendant Mona Dohman ("Dohman"), upon information and belief, was, at all times material herein, a citizen, of the United States and a resident of the State of Minnesota, duly appointed and acting in her individual capacity as the Commissioner of the Minnesota Department of Public Safety.

70.     Plaintiffs will refer to the Defendants Campion and Dohman collectively, as the "Commissioner Defendants" or "Defendant Commissioners."

71.     Defendants DPS Does (1-30), upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed and acting their individual capacities as officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety.

72.     Plaintiffs will refer to officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety who created, installed, monitored, regulated, coded, enforced, supervised, maintained, oversaw, updated, or otherwise worked on the DVS database or BCA database, each of which contained Jennifer's and Jamie's private driver's license information (collectively or individually, "DPS Databases" as "Department of Public Safety Does" or "DPS Does.")

## FACTUAL ALLEGATIONS

### Jennifer, a Former Law-Enforcement Officer, Married Jamie in 2009.

73.     Jennifer attended Hibbing Community College.

74.     Jennifer became involved in law-enforcement since 1996.

75.     From 1996 to 1998, she worked part time for the Biwabik Police Department.

76.     From 1997 to 1998, she also worked part time for the Hoyt Lakes Police Department.

77.     From 1998 to 2001, Jennifer worked full time for the Eveleth Police Department.

12

78.     Jennifer started working full time as a Deputy for the for St. Louis County Sheriff's Department in 2001.

79.     From approximately 2007 to 2008, as part of her duties for the St. Louis County Sheriff's Department, Jennifer was on its drug task force.

80.     Her employment with St. Louis County ended in 2012, due to injuries she suffered from a car accident that happened while she was on duty.

81.     Jennifer was proud to be a law-enforcement officer.

82.     From 2000 to 2019, Jennifer's legal name was Jennifer Shay, which was her married name with her ex-husband.

83.     Jennifer has four children and lives in Britt, Minnesota.

84.     Jennifer was divorced from her first husband in 2005.

85.     Jennifer's ex-husband is a Minnesota State Trooper.

86.     Jennifer's first wedding party consisted of friends, who all were and currently are law-enforcement personnel.

87.     In 2005, after Jennifer's divorce, she lost a significant amount of weight, which became noticeable to others.

88.     Jamie was born and raised in Virginia, Minnesota.

89.     Jamie has always been a law abiding citizen.

90.     Jamie went to school for Horticulture at Dakota County Technical College.

91.     Jamie is self-employed and owns a second-generation landscaping business.

92.     Jamie has an excellent reputation in the community.

13

93.    Jamie has volunteered with an organization dedicated to beautifying Virginia, Minnesota.

94.    Jamie started dating Jennifer in 2007.

95.    Jennifer and Jamie married in 2009.

96.    Jamie holds a Minnesota Class A Commercial Driver's License.

97.    Before the incidents complained of in this Complaint, Jamie always held law-enforcement in high regard.

98.    Jamie has been harassed by Jennifer's ex-husband on several occasions.

99.    Jennifer is concerned that her ex-husband has been obtaining her's and Jamie's private information.

100.    Jamie is and always has been a very private person.

**Law Enforcement Officers and Personnel from Entities Across Minnesota Viewed Plaintiffs' Private Information Outside the Scope of Any Investigation or Official Police Business.**

101.    The Driver and Vehicle Services Division ("DVS") of the DPS maintains a database containing the motor vehicle records of Minnesota drivers. ("DVS Database").

102.    The DVS Database contains "personal information" and "highly restricted personal information," as defined by 18 U.S.C. § 2725 ("Private Data"), including but not limited to names, dates of birth, driver's license numbers, addresses, driver's license photos, weights, heights, social security numbers, various health and disability information, and eye colors of Minnesota drivers, both current and former information dating back to the driver's first license issued in Minnesota.

103.   The Minnesota Driver's License Application states: "you must provide your Social Security Number…"

104.   According to the Minnesota Driver's License Application, "[i]f you don't provide the information requested, DPS cannot issue you a driver's permit, license, or identification card, and your existing driving privileges, may be affected."

105.   As early as 2003, Individual Defendants began looking up Plaintiffs' Private Data on the DVS Database.

106.   After the Individual Defendants looked up Plaintiffs' Private Data, they gained knowledge of the contents of the Private Data.  In gaining such knowledge, the Individual Defendants obtained Plaintiffs' Private Data.

107.   Exhibits A and B, incorporated herein, reflect excerpts of an audit provided by DPS showing each time Plaintiffs' Private Data was obtained or used by an Individual Defendant.

108.   Each act of the Individual Defendants in obtaining Plaintiffs' Private Data also constituted a disclosure by the Commissioner Defendants, because any release or access of information, whether permitted or not, necessarily requires a disclosure; and the method of setting up the DVS Database and of providing constant access to it constituted a disclosure of Private Data under the DPPA.

109.   Column "EsupportStationName" of Exhibits A and B, incorporated herein, reflect the department or entity which, upon information and belief, employed the Individual Defendant that obtained or used Plaintiffs' Private Data.

110.   Column "EsupportPath" of Exhibits A and B, incorporated herein, reflect the type of Private Data that was obtained or used by the Individual Defendant.

111.   Columns "AccessDay" and "AccessDate," of Exhibits A and B, incorporated herein, reflect the day of the week, date, and time when the Individual Defendant obtained or used Plaintiffs' Private Data.

112.   DPS does not provide the name of the individual who obtained or used Plaintiffs' Private Data.

113.   Each line of Exhibits A and B, incorporated herein, reflect the audit of each time Plaintiffs' information, upon information and belief, was obtained or used by an Individual Defendant without a purpose permitted by the DPPA.

114.   Officers employed by, licensed by, or otherwise accessing through Aitkin County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

115.   Defendant Aitkin County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

116.   Plaintiff has never been charged with or suspected of committing a crime in Aitkin County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving Aitkin County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Aitkin County.

117.   Rather, Aitkin County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Aitkin County's personnel.

118.    Officers employed by, licensed by, or otherwise accessing through the City of Aitkin obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

119.    Defendant Aitkin's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

120.    Plaintiff has never been charged with or suspected of committing a crime in the City of Aitkin, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Aitkin, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Aitkin.

121.    Rather, Aitkin's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Aitkin's personnel.

122.    Officers employed by, licensed by, or otherwise accessing through the City of Babbitt obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA seven times.

123.    Defendant Babbitt's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

124.    Plaintiff has never been charged with or suspected of committing a crime in the City of Babbitt, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Babbitt, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Babbitt.

17

125.    Rather, Babbitt's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Babbitt's personnel.

126.    Officers employed by, licensed by, or otherwise accessing through the City of Biwabik obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA fourteen (14) times.

127.    Defendant Biwabik's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

128.    Plaintiff has never been charged with or suspected of committing a crime in the City of Biwabik, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Biwabik, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Biwabik.

129.    Rather, Biwabik's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Biwabik's personnel.

130.    Officers employed by, licensed by, or otherwise accessing through the City of Breitung obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA ten (10) times.

131.    Defendant Breitung's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

132.    Plaintiff has never been charged with or suspected of committing a crime in the City of Breitung, has never been involved in any civil, criminal, administrative, or

arbitral proceeding in or involving the City of Breitung, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Breitung.

133.   Rather, Breitung's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Breitung's personnel.

134.   Officers employed by, licensed by, or otherwise accessing through the City of Chisholm obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA eleven (11) times.

135.   Defendant Chisholm's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

136.   Plaintiff has never been charged with or suspected of committing a crime in the City of Chisholm, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Chisholm, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Chisholm.

137.   Rather, Chisholm's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Chisholm's personnel.

138.   Officers employed by, licensed by, or otherwise accessing through the City of Cloquet obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA four times.

139.   Defendant Cloquet's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

140.    Plaintiff has never been charged with or suspected of committing a crime in the City of Cloquet, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Cloquet, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Cloquet.

141.    Rather, Cloquet's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Cloquet's personnel.

142.    Officers employed by, licensed by, or otherwise accessing through Cook County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA three times.

143.    Defendant Cook County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

144.    Plaintiff has never been charged with or suspected of committing a crime in Cook County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving Cook County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Cook County.

145.    Rather, Cook County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Cook County's personnel.

146.    Officers employed by, licensed by, or otherwise accessing through the City of Cook obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

147.    Defendant Cook's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

148.    Plaintiff has never been charged with or suspected of committing a crime in the City of Cook, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Cook, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Cook.

149.    Rather, Cook's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Cook's personnel.

150.    Officers employed by, licensed by, or otherwise accessing through Crow Wing County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

151.    Defendant Crow Wing County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

152.    Plaintiff has never been charged with or suspected of committing a crime in Crow Wing County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving Crow Wing County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Crow Wing County.

153.    Rather, Crow Wing County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Crow Wing County's personnel.

21

154.    Officers employed by, licensed by, or otherwise accessing through the City of Deer River obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

155.    Defendant Deer River's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

156.    Plaintiff has never been charged with or suspected of committing a crime in the City of Deer River, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Deer River, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Deer River.

157.    Rather, Deer River's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Deer River's personnel.

158.    Officers employed by, licensed by, or otherwise accessing through Douglas County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

159.    Defendant Douglas County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

160.    Plaintiff has never been charged with or suspected of committing a crime in Douglas County, has never been involved in any civil, criminal, administrative, or arbitral

proceeding in or involving Douglas County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Douglas County.

161.    Rather, Douglas County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Douglas County's personnel.

162.    Officers employed by, licensed by, or otherwise accessing through the City of Duluth obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA thirteen (13) times.

163.    Defendant Duluth's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

164.    Plaintiff has never been charged with or suspected of committing a crime in the City of Duluth, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Duluth, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Duluth.

165.    Rather, Duluth's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Duluth's personnel.

166.    Officers employed by, licensed by, or otherwise accessing through the City of Ely obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

167.    Defendant Ely's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

168.   Plaintiff has never been charged with or suspected of committing a crime in the City of Ely, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Ely, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Ely.

169.   Rather, Ely's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Ely's personnel.

170.   Officers employed by, licensed by, or otherwise accessing through the City of Emily obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

171.   Defendant Emily's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

172.   Plaintiff has never been charged with or suspected of committing a crime in the City of Emily, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Emily, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Emily.

173.   Rather, Emily's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Emily's personnel.

174.   Officers employed by, licensed by, or otherwise accessing through the City of Eveleth obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA eighteen (18) times.

175.    Defendant Eveleth's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

176.    Plaintiff has never been charged with or suspected of committing a crime in the City of Eveleth, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Eveleth, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Eveleth.

177.    Rather, Eveleth's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Eveleth's personnel.

178.    Officers employed by, licensed by, or otherwise accessing through the City of Floodwood obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

179.    Defendant Floodwood's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

180.    Plaintiff has never been charged with or suspected of committing a crime in the City of Floodwood, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Floodwood, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Floodwood.

181.    Rather, Floodwood's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Floodwood's personnel.

25

182.    Officers employed by, licensed by, or otherwise accessing through the City of Forest Lake obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

183.    Defendant Forest Lake's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

184.    Plaintiff has never been charged with or suspected of committing a crime in the City of Forest Lake, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Forest Lake, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Forest Lake.

185.    Rather, Forest Lake's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Forest Lake's personnel.

186.    Officers employed by, licensed by, or otherwise accessing through the City of Gilbert obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA fifteen (15) times.

187.    Defendant Gilbert's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

188.    Plaintiff has never been charged with or suspected of committing a crime in the City of Gilbert, has never been involved in any civil, criminal, administrative, or

26

arbitral proceeding in or involving the City of Gilbert, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Gilbert.

189.    Rather, Gilbert's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Gilbert's personnel.

190.    Officers employed by, licensed by, or otherwise accessing through the City of Grand Rapids obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA five times.

191.    Defendant Grand Rapids' obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

192.    Plaintiff has never been charged with or suspected of committing a crime in the City of Grand Rapids, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Grand Rapids, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Grand Rapids.

193.    Rather, Grand Rapids' obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Grand Rapids' personnel.

194.    Officers employed by, licensed by, or otherwise accessing through Hennepin County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

195.    Defendant Hennepin County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

196.    Plaintiff has never been charged with or suspected of committing a crime in Hennepin County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving Hennepin County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Hennepin County.

197.    Rather, Hennepin County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Hennepin County's personnel.

198.    Officers employed by, licensed by, or otherwise accessing through the City of Hermantown obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA four times.

199.    Defendant Hermantown's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

200.    Plaintiff has never been charged with or suspected of committing a crime in the City of Hermantown, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Hermantown, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Hermantown.

201.    Rather, Hermantown's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Hermantown's personnel.

202.    Officers employed by, licensed by, or otherwise accessing through the City of Hibbing obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA twenty-two (22) times.

203.    Defendant Hibbing's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

204.    Plaintiff has never been charged with or suspected of committing a crime in the City of Hibbing, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Hibbing, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Hibbing.

205.    Rather, Hibbing's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Hibbing's personnel.

206.    Officers employed by, licensed by, or otherwise accessing through the City of Hill City obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

207.    Defendant Hill City's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

208.    Plaintiff has never been charged with or suspected of committing a crime in the City of Hill City, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Hill City, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Hill City.

209.    Rather, Hill City's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Hill City's personnel.

210.    Officers employed by, licensed by, or otherwise accessing through the City of Hoyt Lakes obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA three times.

211.    Defendant Hoyt Lakes' obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

212.    Plaintiff has never been charged with or suspected of committing a crime in the City of Hoyt Lakes, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Hoyt Lakes, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Hoyt Lakes.

213.    Rather, Hoyt Lakes' obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Hoyt Lakes' personnel.

214.    Officers employed by, licensed by, or otherwise accessing through the City of International Falls obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA two times.

215. Defendant International Falls' obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

216. Plaintiff has never been charged with or suspected of committing a crime in the City of International Falls, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of International Falls, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of International Falls.

217. Rather, International Falls' obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of International Falls' personnel.

218. Officers employed by, licensed by, or otherwise accessing through Itasca County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA two times.

219. Defendant Itasca County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

220. Plaintiff has never been charged with or suspected of committing a crime in Itasca County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving Itasca County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Itasca County.

221.    Rather, Itasca County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Itasca County's personnel.

222.    Officers employed by, licensed by, or otherwise accessing through the City of Keewatin obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA three times.

223.    Defendant Keewatin's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

224.    Plaintiff has never been charged with or suspected of committing a crime in the City of Keewatin, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Keewatin, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Keewatin.

225.    Rather, Keewatin's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Keewatin's personnel.

226.    Officers employed by, licensed by, or otherwise accessing through Lake County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA seven times.

227.    Defendant Lake County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

228.    Plaintiff has never been charged with or suspected of committing a crime in Lake County, has never been involved in any civil, criminal, administrative, or arbitral

proceeding in or involving Lake County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Lake County.

229.    Rather, Lake County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Lake County's personnel.

230.    Officers employed by, licensed by, or otherwise accessing through the City of Leech Lake obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA two times.

231.    Defendant Leech Lake's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

232.    Plaintiff has never been charged with or suspected of committing a crime in the City of Leech Lake, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Leech Lake, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Leech Lake.

233.    Rather, Leech Lake's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Leech Lake's personnel.

234.    Officers employed by, licensed by, or otherwise accessing through the City of Maple Grove obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA four times.

235.    Defendant Maple Grove's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

236.    Plaintiff has never been charged with or suspected of committing a crime in the City of Maple Grove, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Maple Grove, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Maple Grove.

237.    Rather, Maple Grove's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Maple Grove's personnel.

238.    Officers employed by, licensed by, or otherwise accessing through the City of Minneapolis obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA three times.

239.    Defendant Minneapolis' obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

240.    Plaintiff has never been charged with or suspected of committing a crime in the City of Minneapolis, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Minneapolis, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Minneapolis.

241.   Rather, Minneapolis' obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Minneapolis' personnel.

242.   Officers employed by, licensed by, or otherwise accessing through the City of Nashwauk obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

243.   Defendant Nashwauk's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

244.   Plaintiff has never been charged with or suspected of committing a crime in the City of Nashwauk, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Nashwauk, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Nashwauk.

245.   Rather, Nashwauk's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Nashwauk's personnel.

246.   Officers employed by, licensed by, or otherwise accessing through Norman County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

247.   Defendant Norman County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

248.    Plaintiff has never been charged with or suspected of committing a crime in Norman County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving Norman County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Norman County.

249.    Rather, Norman County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Norman County's personnel.

250.    Officers employed by, licensed by, or otherwise accessing through the City of Orono obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA two times.

251.    Defendant Orono's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

252.    Plaintiff has never been charged with or suspected of committing a crime in the City of Orono, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Orono, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Orono.

253.    Rather, Orono's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Orono's personnel.

254.    Officers employed by, licensed by, or otherwise accessing through Pine County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

255.     Defendant Pine County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

256.     Plaintiff has never been charged with or suspected of committing a crime in Pine County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving Pine County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Pine County.

257.     Rather, Pine County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Pine County's personnel.

258.     Officers employed by, licensed by, or otherwise accessing through Ramsey County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

259.     Defendant Ramsey County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

260.     Plaintiff has never been charged with or suspected of committing a crime in Ramsey County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving Ramsey County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Ramsey County.

261.     Rather, Ramsey County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Ramsey County's personnel.

262.    Officers employed by, licensed by, or otherwise accessing through the City of Roseau obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

263.    Defendant Roseau's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

264.    Plaintiff has never been charged with or suspected of committing a crime in the City of Roseau, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Roseau, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Roseau.

265.    Rather, Roseau's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Roseau's personnel.

266.    Officers employed by, licensed by, or otherwise accessing through the City of Sartell obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA two times.

267.    Defendant Sartell's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

268.    Plaintiff has never been charged with or suspected of committing a crime in the City of Sartell, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Sartell, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Sartell.

269.    Rather, Sartell's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Sartell's personnel.

270.    Officers employed by, licensed by, or otherwise accessing through Scott County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

271.    Defendant Scott County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

272.    Plaintiff has never been charged with or suspected of committing a crime in Scott County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving Scott County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Scott County.

273.    Rather, Scott County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Scott County's personnel.

274.    Officers employed by, licensed by, or otherwise accessing through Sherburne County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA four times.

275.    Defendant Sherburne County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

276.    Plaintiff has never been charged with or suspected of committing a crime in Sherburne County, has never been involved in any civil, criminal, administrative, or

arbitral proceeding in or involving Sherburne County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Sherburne County.

277.    Rather, Sherburne County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Sherburne County's personnel.

278.    Officers employed by, licensed by, or otherwise accessing through the City of St. James obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA nine (9) times.

279.    Defendant St. James' obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

280.    Plaintiff has never been charged with or suspected of committing a crime in the City of St. James, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of St. James, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of St. James.

281.    Rather, St. James' obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of St. James' personnel.

282.    Officers employed by, licensed by, or otherwise accessing through St. Louis County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one hundred and sixty-three (163) times.

283.    Defendant St. Louis County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

40

284.   Plaintiff has never been charged with or suspected of committing a crime in St. Louis County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving St. Louis County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by St. Louis County.

285.   Rather, St. Louis County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to St. Louis County's personnel.

286.   Officers employed by, licensed by, or otherwise accessing through the City of St. Paul obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA two times.

287.   Defendant St. Paul's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

288.   Plaintiff has never been charged with or suspected of committing a crime in the City of St. Paul, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of St. Paul, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of St. Paul.

289.   Rather, St. Paul's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of St. Paul's personnel.

290.   Officers employed by, licensed by, or otherwise accessing through the City of Two Harbors obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA three times.

291.    Defendant Two Harbors' obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

292.    Plaintiff has never been charged with or suspected of committing a crime in the City of Two Harbors, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Two Harbors, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Two Harbors.

293.    Rather, Two Harbors' obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Two Harbors' personnel.

294.    Officers employed by, licensed by, or otherwise accessing through the City of Virginia obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA thirteen (13) times.

295.    Defendant Virginia's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

296.    Plaintiff has never been charged with or suspected of committing a crime in the City of Virginia, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Virginia, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Virginia.

297.    Rather, Virginia's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Virginia's personnel.

298.    Officers employed by, licensed by, or otherwise accessing through Washington County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

299.    Defendant Washington County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

300.    Plaintiff has never been charged with or suspected of committing a crime in Washington County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving Washington County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Washington County.

301.    Rather, Washington County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Washington County's personnel.

302.    Officers employed by, licensed by, or otherwise accessing through Winona County obtained Jennifer's Private Data, as reflected in Exhibit A for purposes not permitted by the DPPA one time.

303.    Defendant Winona County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

304.    Plaintiff has never been charged with or suspected of committing a crime in Winona County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving Winona County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by Winona County.

305.    Rather, Winona County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to Winona County's personnel.

306.    Officers employed by, licensed by, or otherwise accessing through the City of Cook obtained Jamie's Private Data, as reflected in Exhibit B for purposes not permitted by the DPPA one time.

307.    Defendant Cook's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

308.    Plaintiff has never been charged with or suspected of committing a crime in the City of Cook, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Cook, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Cook.

309.    Rather, Cook's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Cook's personnel.

310.    Officers employed by, licensed by, or otherwise accessing through the City of Hermantown obtained Jamie's Private Data, as reflected in Exhibit B for purposes not permitted by the DPPA one time.

311.   Defendant Hermantown's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

312.   Plaintiff has never been charged with or suspected of committing a crime in the City of Hermantown, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Hermantown, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Hermantown.

313.   Rather, Hermantown's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Hermantown's personnel.

314.   Officers employed by, licensed by, or otherwise accessing through the City of Hibbing obtained Jamie's Private Data, as reflected in Exhibit B for purposes not permitted by the DPPA one time.

315.   Defendant Hibbing's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

316.   Plaintiff has never been charged with or suspected of committing a crime in the City of Hibbing, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving the City of Hibbing, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Hibbing.

317.    Rather, Hibbing's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Hibbing's personnel.

318.    Officers employed by, licensed by, or otherwise accessing through St. Louis County obtained Jamie's Private Data, as reflected in Exhibit B for purposes not permitted by the DPPA twenty-four (24) times.

319.    Defendant St. Louis County's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

320.    Plaintiff has never been charged with or suspected of committing a crime in St. Louis County, has never been involved in any civil, criminal, administrative, or arbitral proceeding in or involving St. Louis County, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by St. Louis County.

321.    Rather, St. Louis County's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to St. Louis County's personnel.

322.    Officers employed by, licensed by, or otherwise accessing through the City of Virginia obtained Jamie's Private Data, as reflected in Exhibit B for purposes not permitted by the DPPA one time.

323.    Defendant Virginia's obtainment and use of Plaintiff's personal information was not for any use in carrying out any law enforcement, governmental, judicial, or litigation-related function.

324.    Plaintiff has never been charged with or suspected of committing a crime in the City of Virginia, has never been involved in any civil, criminal, administrative, or

arbitral proceeding in or involving the City of Virginia, and there was no legitimate reason for Plaintiff to have been the subject of any investigation by the City of Virginia.

325.    Rather, Virginia's obtainment and use of Plaintiff's personal information was for purposes that were purely personal to the City of Virginia's personnel.

326.    Officers employed by the Entity Defendants, along with those Individual Defendants currently identified as John and Jane Does, obtained or used Jennifer's Private Data approximately four hundred and forty-six (446) times.

327.    Officers employed by the Entity Defendants, along with those Individual Defendants currently identified as John and Jane Does, obtained or used Jamie's Private Data approximately thirty-four (34) times.

328.    Each of the above accesses was committed knowingly; each of the above accesses was for a reason not permitted under the DPPA, meaning that the Defendants had no law-enforcement reason for accessing the information.

329.    Defendants accessed the information for personal reasons completely unrelated to their position as law-enforcement officers, public employees, or in their job functions.

330.    Individual Defendants viewed Plaintiffs' Private Data from their State-issued driver's license including their home address, color photograph or image, date of birth, eye color, height, weight, driver identification number, and upon information and belief, medical and social security information.  Jamie provided medical information related to his Class A driver's license.

331.    Curiosity about Plaintiffs or other personal reasons are not purposes permitted for obtaining information under the DPPA.

332.    The Individual Defendants mentioned above who obtained this information did so using Plaintiffs' names, not pursuant to a license plate look-up, and there is seldom any law-enforcement function that would permit accessing Plaintiffs' private information by name; Plaintiffs were not involved in any criminal activity nor suspected of any such activity; they had not committed any act that would entitle Entity Defendants and Individual Defendants to obtain their information under any of the permissible exceptions; to the extent any such permissible reason could exist, Plaintiffs have eliminated permissible obtainments from the obtainments here complained of; and no Defendant has proposed a valid, credible reason for obtaining Plaintiffs' information.

333.    Under the direction of the Commissioner Defendants, DPS, and DPS Does, knowingly created the DVS Database that includes Plaintiffs' Private Data and the system for law-enforcement personnel to obtain to that information.

334.    DPS and DPS Does, under the direction of the Commissioner Defendants, knowingly maintained and updated the DVS Database that included Plaintiffs' Private Data.

335.    DPS Commissioners and DPS Does authored the Minnesota Driver's License Application, which states, "your personal information may be disclosed as authorized by United States Code, title 18, section 2721." (emphasis added).

336.    DPS Commissioners and DPS Does made the decisions for establishing, ordering the structure of, and determining the persons, agencies and individuals to whom they would disclose the database.

337.    The disclosure of information was made by providing a user account and a password without reasonably requiring or ensuring that accesses would be limited to those for a purpose permitted under the DPPA.

338.    This form of disclosure was and is used not only for law-enforcement personnel but other recipients who have access to the database, including non-government employees, who comprise about half of the persons who have been granted access to this database.

339.    DPS Does and Commissioner Defendants failed to use reasonable care in so disclosing the information in the database.

340.    DPS Does and Commissioner Defendants made no reasonable effort nor directed any subordinate to make any reasonable effort to require that the specified purpose of the disclosure was legitimate and would be adhered to by the person to whom the data was disclosed.

341.    DPS Does and Commissioner Defendants failed to reasonably ascertain or ensure that the persons to whom it was disclosed would use it permissibly.

342.    DPS Does and Commissioner Defendants had at the least constructive knowledge of the widespread abuse of the database by officers illegally accessing it for personal reasons not permitted by the DPPA, and had they not delegated their duties to others would have known of the actual misuse and would have presumably fulfilled their

49

statutory duties and prevented the illegal accesses including those that have adversely affected Plaintiffs.

343.   DPS Does and Commissioner Defendants knowingly disclosed Plaintiffs' data without requiring that the concomitant obtainment was for a permissible purpose; they disclosed it without taking any effective steps to insure adherence by the individuals—whether private or public sector—obtaining it were or would do so for a permissible purpose.

344.   Knowledge of the illegal obtainment of Plaintiffs' information by numerous individuals should be imputed to the DPS Does and Commissioner Defendants based in part on their delegation to others of their duty to disclose Private Data for only permissible purposes.

345.   DPS Does and Commissioner Defendants failed to ascertain or ensure specifically that law-enforcement personnel would use it permissibly, that is, for a law enforcement function.

346.   DPS Does and Commissioner Defendants failed to ascertain or ensure that the persons to whom it was disclosed would use it exclusively for a law-enforcement function.

347.   DPS Does and Commissioner Defendants failed to provide adequate training in the permissible uses of the database.

348.   DPS Does and Commissioner Defendants, under 18 U.S.C. § 2724(a), knowingly disclosed Plaintiffs' personal information for a purpose not permitted by the DPPA.

50

349.    DPS Does and Commissioner Defendants gave Individual Defendants access to the database for purposes of their intended misuse of the database.

350.    Disclosure of this database is a matter known to and participated in and directed by the DPS Does and Commissioner Defendants.

351.    The DPS Does and Commissioner Defendants had a duty to ascertain the recipients' purpose for his/her obtainment or use of the private data.

352.    The DPS Does and Commissioner Defendants, at times, delegated the duty to ascertain the recipients' purpose to other individuals.

353.    To the extent the DPS Does and Commissioner Defendants delegated any part of their duties, they are still responsible for disclosure, and the persons, to whom they may have delegated, if any, are not known to Plaintiffs and cannot be known by Plaintiffs.

354.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2003.

355.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2004.

356.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2005.

357.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2006.

358.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2007.

359.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2008.

360.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2009.

361.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2010.

362.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2011.

363.    DPS Does and Commissioner Defendants failed to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2012.

364.   DPS Does and Commissioner Defendants continue to fail to monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes in 2013.

365.   DPS and DPS Does, under the direction of Commissioner Defendants, had the ability to determine that drivers' license information, including Plaintiffs' Private Data, was being accessed on multiple occasions, by multiple law-enforcement personnel from multiple law-enforcement agencies.

366.   DPS and DPS Does, under the direction of the Commissioner Defendants, had the ability to prevent unauthorized access to the DVS Database, including unauthorized access to Plaintiffs' Private Data.

367.   DPS and DPS Does, under the direction of the Commissioner Defendants, failed to prevent unauthorized access to the DVS Database, including access to Plaintiffs' Private Data.

368.   The Commissioner Defendants and DPS Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in the disclosure of Plaintiffs' Private Data.

369.   The policy of the State of Minnesota is to uphold the provisions of the law, both state and federal, and to protect and safeguard the privacy rights of the State's citizens and inhabitants, including its drivers' privacy rights, and including those rights as are required to be protected by federal law.

370.   In particular, it is the policy of the State of Minnesota, as outlined in Minn. Stat. § 171.12, subd. 7, to comply with the provisions and requirements of the DPPA.

371.   This policy is also set forth in the driver's license application and set forth in statutory language with proper citation to that federal statute.

372.   Defendant Commissioners and DPS Does knowingly disclosed Plaintiffs' and others' Private Data and violated state policy by devising and implementing a database, such as the DVS Database, that failed abysmally to uphold the privacy rights of Plaintiffs and others similarly situated as protected by the DPPA.

373.   This failure exposed their information to impermissible and knowing accesses by various persons, including the Defendants in this lawsuit.

374.   These acts and failures to act by Defendant Commissioners and DPS Does constitute knowing disclosures of Plaintiffs' information within the meaning of the DPPA.

375.   Defendant Commissioners and DPS Does knowingly devised and implemented a database and a method for using and misusing that database that both permitted and encouraged, through the nature and monitoring of the system, accesses by law-enforcement personnel, state employees, and others that failed to comply with state policy of protecting privacy rights and complying with the DPPA.

376.   The system knowingly devised and implemented by Commissioner Defendants and DPS Does failed to set rules protecting Plaintiffs' privacy rights.

377.   This system permitted, and on information and belief still permits, the accessing of the database from personal computers.

378.   This system allowed individuals to give out their personal passwords to others.

379.    This system permitted, and on information and belief may still permit, the accessing of the system by persons without any accountability or even in some instances without the ability to trace the person who made the access.

380.    From 2003 through 2010, this system did not require reasonably adequate training on the use of the DVS database of sworn-law enforcement officers.

381.    From 2011 through today, this system still does not require reasonably adequate training on the use of the DVS database of sworn law-enforcement officers.

382.    Accordingly, the effective monitoring of the system is difficult if not impossible under the system as devised and implemented by Commissioner Defendants and DPS Does.

383.    Commissioner Defendants and DPS Does have deliberately emphasized and favored the convenience of the system by users at the expense of protecting the privacy rights of the persons whose information is in the database.

384.    This deliberate emphasis and preference for convenience to the system users over the privacy rights of the drivers was known to the Commissioner Defendants and the DPS Does, and was purposeful.

385.    In failing to properly implement, maintain, and monitor the DVS Database, Commissioner Defendants failed to follow Minnesota state policy.

386.    Many viable methods were and are available to prevent this illegal accessing of private information.

387.    Upon information and belief, the Commissioners and DPS Does actually knew that law-enforcement officers were accessing the databases for purposes not permitted under the DPPA.

388.    Upon information and belief, the Commissioners and DPS Does actually knew that law-enforcement officers were viewing Plaintiffs' Private Data without a legitimate and purpose permitted by the DPPA.

389.    Upon information and belief, the Commissioners and DPS Does acquiesced, facilitated, approved, or simply ignored the improper conduct by governmental personnel.

390.    Even if the Commissioners and DPS Does had no actual knowledge of the impermissible uses of the databases they oversaw, upon information and belief, they were reckless in their supervision of their subordinates who did operate the database.

391.    Upon information and belief, the Commissioners and DPS Does were negligent in supervising their subordinates who operated the databases.

392.    The information contained in the DPS database is far greater and contains more private personal information than is customarily known to non-law enforcement personnel.

393.    The information contained in the DPS database includes the social security numbers of the drivers, including Plaintiffs' social security numbers.

394.    The information contained in the DPS database includes drivers' health information.  Jamie's Class A driver's license includes medical information.  These accesses are committed surreptitiously, and without the knowledge of the victims,

56

including Plaintiffs, which knowledge is kept hidden and concealed from the victims, including Plaintiffs.

395.     There has not been a single instance of which Plaintiffs are aware involving them or anyone else where an officer has informed them that he or she has accessed their information.

396.     Law-enforcement officers have gone to great lengths to avoid letting Plaintiffs know they have accessed their personal private information.

397.     The surreptitious, concealed, and hidden accesses are kept secret from the general public and from the victims, including Plaintiffs.

398.     Commissioner Defendants and DPS Does allowed multiple breaches of the security of Plaintiffs' Private Data in violation of Minn. Stat. 13.055.

399.     Commissioner Defendants and DPS Does failed to disclose to Plaintiffs this breach of the security of the data in violation of Minn. Stat. 13.055.

400.     Obtaining the DVS Database without a permissible reason is a breach of confidentiality.

401.     Plaintiffs contacted DPS to inquire whether law-enforcement officers had been viewing their private information.

402.     The DPS website states that the public is entitled to information except that which is classified:

> [T]he law states that all the data DPS or a governmental entity has are public (can be seen by anybody) unless there is a state or federal law that classified the data as not public.  You have the right to look at all public data that DPS keeps.

(*See* "Minnesota Department of Public Safety: Public Access to Government Data," attached to this Complaint as Exhibit C)

403.    The DPS website also informs the public that anyone can request information in any way, by phone, in person, mail, or email; that specific data can be requested, or "entire records, files or data bases" or all public data that DPS keeps." It instructs the person requesting the information that "you don't have to tell us who you are or explain why you are asking for the data." Id.

404.    But despite its stated policy, before August 2011, the actual practice of DPS was to withhold, deny and mislead the public to prevent access to this information. (See Affidavit of Dan Prozinski, attached to this Complaint as Exhibit D; August 23, 2011 email from Joseph Newton to A. Geraghty, attached to this Complaint as Exhibit E; and the Second Amended Complaint to Kampschroer v. Anoka Cty., et. al, 13-2512 SRN/TNL, at ¶¶ 410 – 426).

405.    DPS practice in this regard amounted to concealment of the illegality, by misleading the public on those occasions when they became suspicions about the invasion of their private data.

406.    These invasions or illegal accesses of their Private Data were by their very nature actively concealed, since those making the accesses concealed them from their supervisors and from Plaintiffs; at no time did anyone approach Plaintiffs and advise them that he or she had accessed their Private Data.

407.    In 2013, Plaintiffs requested an audit from Kim Jacobson at DPS.

408.    The Minnesota Department of Motor Vehicles is a division of DPS.

409.    On May 23, 2013, Jacobson provided the results of the audit to Jennifer.

410.    On May 23, 2013, Jacobson provided the results of the audit to Jamie.

411.    The audit requests and the results furnished, were for name look-ups only and specifically did not include any license plate or driver's license number look-ups.

412.    Jennifer was sickened to learn from DPS that it had determined that officers and personnel from approximately several different departments and agencies had reviewed, and impermissibly obtained or used, her Private Data approximately 446 times since 2003. See Exhibit A.

413.    Jamie was similarly disgusted to learn from DPS that it had determined that officers and personnel from approximately several different departments and agencies had reviewed, and impermissibly obtained or used, his Private Data approximately 34 times since 2006. See Exhibit B.

414.    Before requesting the audit report, Plaintiffs had no knowledge that their Private Data had been obtained through the DVS Database.  Plaintiffs were not under any criminal investigation; they had committed no crimes; they were not a witness to any crime, nor were they involved with anyone in a criminal investigation, or even a civil lawsuit; they were not of any legitimate interest to law-enforcement other than for personal reasons, such as curiosity, gossip or romantic attraction.

415.    Jennifer has not been stopped for a traffic violation since approximately 1997.

416.    Jamie has not been stopped for a traffic violation since approximately 2006.

417.   There is no possible law-enforcement function that would have made invading Plaintiff' privacy permissible under the DPPA.

418.   Before filing suit, Plaintiffs (through their attorneys) contacted the Entity Defendants, providing the relevant portion of the audit, sending them a letter in which they requested the Entity to provide them with any permissible reason it or its employees, agents, and officers had in looking up their information; Defendants never provided any legitimate permissible reason for these illegal obtainments.

419.   Plaintiffs believe that even more unauthorized accesses and viewings will occur in the future if the policies of Entity Defendants and other police departments and law-enforcement agencies similarly situated are not changed to bring the actual custom and practice of these Entity Defendants and others similarly situated into compliance with their own written rules, with the rules of the Department of Public Safety, and with federal law, including the DPPA.

420.   Included in the audit is the listing of various law-enforcement departments associated with the Defendant Entities that obtained Plaintiffs' Private Data.

421.   Individual Defendants' identities (John and Jane Does) are not presently known, and purportedly cannot be revealed pursuant to the Minnesota Government Data Practices Act.  Plaintiffs anticipate that these yet-to-be-named Individual Defendants will become known through discovery.

422.   Supervisor Defendants are not presently known.  Plaintiffs anticipate that the yet-to-be-named Supervisor Defendants who should have monitored, prevented and

stopped the unauthorized accesses to Plaintiffs' information will become known through discovery.

423.   The remaining Entity Defendant identities (Entity Does) are not presently known, because not all of the entities identified by the DPS have provided sufficient information to determine if their personnel's access to the database was unauthorized. Plaintiffs anticipate that these yet-to-be-named Entity Defendants will become known through discovery.

424.   Defendant Commissioners released and disclosed this information without training or with wholly inadequate training for the individuals with access to the DVS database.

425.   Defendant Commissioners released and disclosed Plaintiffs' Private Data to individuals without ascertaining whether it was obtained for a purpose permitted under the DPPA, but instead relied on the status of the person obtaining it, assuming that because of the person's status their obtainment of the information was for a purpose permitted by the DPPA.

426.   Whatever training, monitoring, or inquiry into the officers' usage of the information systems has been adopted is woefully inadequate to ensure that access is used properly and lawfully.

427.   On information and belief, despite this training, Defendant Entities and Defendant Supervisors, allowed their employees, including but not limited to Individual Defendants, to view Plaintiffs' Private Data for unlawful purposes.

428.    On information and belief, Defendant Entities, Defendant Supervisors, and Commissioner Defendants permitted, condoned, or acquiesced in this illegal access to Plaintiffs' private information, and knew or should have known that it was occurring.

429.    On information and belief, this illegal access occurs with regularity not only of Plaintiffs' private information, but of other Minnesota drivers' private information.

430.    Defendant Entities, Defendant Supervisors, Defendant Commissioners and DPS Does have lax policies or lax enforcement of these policies that allow for these intrusions.

431.    Defendant Entities, Defendant Supervisors, Defendant Commissioners and DPS Does either have no viable method of or have an inadequate method of ascertaining and controlling the illegal access to individuals' private information by their officers.

432.    The Driver's License application assures Minnesota drivers their information will be safeguarded and kept private, "DPS releases this information to local, state, and federal government agencies only as authorized or required by state and federal law."

433.    Plaintiffs submitted their Private Data to DPS, including their social security numbers, because of the promise of confidentiality made by DPS.

434.    Plaintiffs relied on this promise of confidentiality when they provided their Private Data to DPS to obtain a driver's license.

435.    The failure of Defendant Entities and Defendant Supervisors to keep this information private is a flagrant breach of a promise of confidentiality.

436.    Defendant Entities, Defendant Supervisors, Commissioner Defendants, and DPS Does either have no viable method of or have an inadequate method of ascertaining and controlling the illegal access to individuals' private information by their officers.

437.    The extent of this illegal access is widespread and pervasive throughout departments, and is a custom and practice.

438.    The widespread practice is demonstrated by the systematic tolerance of illegal accesses.

439.    Further evidence of the custom and practice can be found in actual statements made by current officers, one of whom was quoted in a magazine article about the illegal access into previous cases involving this same breach of privacy as saying that "every single cop in the state has done this.  Chiefs on down."

440.    Further evidence is based on actual statements made by former officers, one of whom was quoted in a magazine article about illegal accesses of other individuals as saying that "[y]ou used to look up people without a second thought.  You'd look up old friends from high school or just someone you used to know."

441.    Each individual with access to the DPS Database has a password allowing that individual access to the DPS Database.

442.    Personnel can access the DPS Databases from any computer with internet access.

443.    Personnel occasionally gave other individuals their passwords, contrary to requirements.

444.    The system for accessing accountability and responsibility was and is prone to error and fails to reasonably protect drivers' private information.

445.    When Defendant personnel viewed Plaintiffs' private information, they did not do so to carry out official police functions.

446.    Plaintiffs committed no crimes or transgressions that would explain or legitimize the unauthorized access of their Private Data.

447.    The Individual Defendants obtained Plaintiffs' personal information without probable cause or reasonable suspicion to believe that Plaintiffs had engaged in any criminal activity or any activity even remotely related to criminal activity.

448.    Plaintiffs never waived the protections of the DPPA.

449.    Defendants' actions have violated the United States Constitution, the DPPA, 42 U.S.C. § 1983, and Minnesota State law.

450.    The sheer volume of the intrusions into their private life demonstrates that law-enforcement personnel, public employees, and others are unfairly hostile and careless toward Plaintiffs' privacy and safety.

451.    As a result of these invasions of privacy, Plaintiffs have suffered and continue to suffer significant emotional distress.

452.    It was extremely disturbing to Jennifer to see the extent of the queries on her audit, to see how law-enforcement personnel were misusing their power, and with many employees of her former employers obtaining her information.

453.    Jamie feels violated because he did nothing wrong to invite this illegal behavior.  All he did was date and marry a law-enforcement officer.

**THE COMMISSIONERS HAVE KNOWN ABOUT THESE VIOLATIONS.**

454.    DPS Commissioners Campion and Dohman have been involved with law enforcement for many years.

455.    Commissioner Dohman has been a law enforcement officer for thirty years, having formerly served as police chief of the City of Maple Grove from 2001 until her appointment as DPS Commissioner in March 2011.

456.    Before becoming Chief of Police of the Maple Grove Police Department she was an investigator, patrol officer, sergeant and captain of the Maple Grove Police Department; and prior to that time, she was a patrol officer of the City of Glencoe and of the City of Marshall, Minnesota.

457.    Dohman also served as president of the Minnesota Chiefs of Police Association.

458.    Upon information and belief, the misuse of private information is the main complaint of most police chiefs and human resources personnel.

459.    Former Commissioner Michael Campion served from July 2004 until March 2011.  Prior to his appointment as DPS Commissioner he was supervisor of the BCA, which also maintains a driver's license database.

460.    Prior to that position, Campion was a special agent at the BCA.

461.    It was during his tenure that the DPS database was largely developed in its current format.

462.    On information and belief, misuse of the DPS database has been well-known to Commissioner Defendants.  At a Legislative Audit Subcommittee hearing in

65

February, 2013 at which Commissioner Dohman testified, the testimony of the

Legislative Auditor revealed that at least 50% of law enforcement officers are misusing

the DPS database by obtaining, disclosing, and/or using the driver license personal

information for an impermissible purpose.

463.    On information and belief, Commissioner Defendants knew this, and

knowingly disclosed the information in part by (a) failing to safeguard and monitor the

database despite knowing of its rampant misuse, (b) willfully refusing to correct the

misuses, or (c) both failing to monitor and refusing to correct the abuse and misuse of the

system.

464.    Experts in the field of police training report that the primary complaint of

many police departments is that law enforcement personnel misuse private information.

This is an established, well-known, and pervasive problem with law enforcement that

Commissioner Defendants are unwilling to properly address.

**THE COMMISSIONER DEFENDANTS AND DPS DOES REASONABLY
COULD HAVE DONE SIGNIFICANTLY MORE TO PROTECT PLAINTIFFS'
PRIVACY.**

465.    On information and belief, the only changes and improvements to the DPS

system to increase the protection of privacy, especially from law enforcement, have

occurred only after litigation involving DPS, specifically the lawsuit titled Anne Marie

Rasmusson v. City of Bloomington, No. 12-CV-00632 (SRN/JSM).  In that case Plaintiff

sued, among others, the Commissioners of the DPS and was able to obtain through

settlement significant changed to the DVS database, including numerous protections such

as different types of periodic audits.  On information and belief, the 19,000 improper

accesses of former Department of Natural Resources Captain John Hunt were discovered

in part due to those changes.  The vast majority of the restrictions and protections on

driver privacy have occurred due to the Rasmusson case and others like it.  The

Commissioners in Minnesota remain highly resistant to improving the DPS database,

instead looking to the individual officers and local governments to institute changes,

which is a far less effective method of instituting changes and will result in piecemeal

and inadequate changes in protections at best.

466.    On information and belief, states other than Minnesota have far greater

restrictions and protections in place to protect the data on their drivers' license databases

from being obtained, disclosed or used for a reason not permitted by the DPPA.

467.    For instance, on further information and belief, North Dakota requires a

daily report of anyone who obtains driver photos and its system generates weekly reports

listing all individuals with accesses of over 25 images a day.  These reports are sent to the

North Dakota Attorney General to make inquiries as to whether the information was

obtained for a job-related reason.  North Dakota also requires the users of the database to

declare the reason why they were looking at the record.  North Dakota also requires its

users to take a certification test before being given access to the database.

468.    Also on information and belief, the State of California's DMV cooperates

with its law-enforcement agencies and California's Department of Justice to ensure

access to its drivers' license information is limited to agencies that satisfy specific

requirements before they are issued a confidential requester code that permits access to

67

law-enforcement information only.  Each law-enforcement agency is responsible for limiting access to necessary personnel.  California also periodically reviews law-enforcement applications to ensure the agency and person requesting the information is still entitled to obtain the information.  During a recent audit, California's DMV reviewed questionable agencies and even reclassified some to prevent them from having further access to the database.

469.    On further information and belief, the California DMV has a dedicated law-enforcement unit to analyze data inquiries.  Each data request is logged and technicians are trained to look for developing patterns in the requester's history.  The California DMV also conducts periodic historical reviews of a specific agency's requests to determine if the accesses were authorized.  The California DMV may also require a law-enforcement entity to supply an explanation of events, describe their protocols for accessing DMV information, what policies or access requirements were violated, what corrective or administrative steps are being taken to admonish the officer, and what steps the agency is taking to avoid future occurrences.  All users annually complete an information security form.  Finally, the California DMV is very restrictive on the types of information it releases.

470.    On information and belief, DPS Commissioners, DPS and Defendants Entities knew or should have known of the policies and practices of other States, but did not a the time that Plaintiffs' drivers' license information was being impermissibly obtained, require any of the protections and safeguards to the Minnesota DPS Databases utilized by other states.

471.    Given that other states do and did have safeguards and protections in place to protect their drivers' private information from impermissible accessing, use, and disclosure, DPS Commissioners, DPS and Defendants Entities reasonably should have implemented such safeguards and protections for Minnesota drivers, including Plaintiffs.

472.    The implementation of some or all of these safeguards and protections by Defendants would have prevented many of the impermissible obtainment, uses, and disclosures of Plaintiffs' private data.

## COUNT I: VIOLATION OF THE DPPA, 18 U.S.C. § 2721, *et seq.*

*(Against all Defendants)*

473.    Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 472.

474.    Plaintiffs provided personal information to the DPS including their address, color photograph, date of birth, weight, height, eye color, social security numbers and medical information for the purpose of acquiring and utilizing a State of Minnesota driver's license.

475.    The DPS Database also maintained Plaintiffs' driving record.

476.    Plaintiffs did not provide their consent for any of Defendant Individuals to obtain, disclose or use, or for any of Defendant Entities or Defendant Supervisors to disclose or to allow Defendant Individuals to obtain, disclose or use, their private information for anything but official law-enforcement business.

477.    Knowingly obtaining, disclosing or using Private Data for a purpose not permitted by the DPPA is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

478.   The DPPA provides redress for violations of a person's protected interest in the privacy of their motor vehicle records and the identifying information therein.

479.   Minnesota law is to enforce and follow the DPPA and to hold all information obtained pursuant to an application for a driver's license confidential and private; even prior to the passage of the DPPA in 1994 Minnesota law pledged to hold all this information private and confidential, and on one's driver's license application these promises of confidentiality are all made; Defendants' actions in accessing this information is a flagrant breach of that pledge of confidentiality.

480.   Each of the Defendants invaded Plaintiffs' legally protected interest under the DPPA.

481.   According to the Department of Vehicle Services, the Individual Defendants knowingly obtained, disclosed or used Plaintiffs' personal information, from a motor vehicle record, for a purpose not permitted under the DPPA.  18 U.S.C. § 2724(a).

482.   None of the Individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Plaintiffs'' private information.

483.   By the actions described above, each Defendant Individual was acting within the scope of his or her employment when he or she obtained, disclosed or used Plaintiffs' personal information from the DPS Databases for a purpose not permitted by the DPPA.

484.   Individual Defendants knew that their actions related to Plaintiffs' Private Data were in violation of the DPPA.

485. Defendant Entities and Defendant Supervisors knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Plaintiffs' private personal information by Individual Defendants.

486. Defendant Commissioners, Defendant Entities and Defendant Supervisors' actions constitute a knowing disclosure of the personal information of Plaintiffs under the DPPA.

487. Individual Defendants knowingly used Defendant Entities' computers, passwords and passcodes to obtain Plaintiffs' private information.

488. Plaintiffs' private information was obtained by each Individual Defendant for purposes that are not permitted under the DPPA.

489. Defendant Entities are each vicariously liable for the acts of Defendant Individuals.

490. By the actions complained of, Commissioner Defendants, and DPS Does are jointly liable for the acts of Defendant Individuals.

491. Plaintiffs have suffered harm because their private information has been obtained and viewed unlawfully.

492. Plaintiffs have further suffered harm because their private information has been obtained unlawfully. Plaintiffs suffer and continue to suffer harm by virtue of the increased risk that their protected information is in the possession of Individual Defendants who obtained it without a legitimate purpose.

493. This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

494.    Individual Defendants, Supervisor Defendants, and Commissioner Defendants each willfully and recklessly disregarded the law, entitling Plaintiffs to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. § 549.20. Plaintiffs are entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

495.    In addition, under the DPPA, Plaintiffs are entitled to a baseline liquidated damages award of at least $2,500 for each violation of the DPPA.  18 U.S.C. § 2721(b)(1).  Plaintiffs need not prove actual damages to receive said liquidated damages.

## COUNT II: VIOLATION OF 42 U.S.C. § 1983

*(Against All Individual Defendants Including Jane and John Does)*

496.    Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 495.

497.    The Fourth Amendment to the Constitution of the United States provides for the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

498.    The Fourteenth Amendment provides all individuals in the United States with a substantive due process right of privacy.

499.    The Fourth Amendment to the Constitution of the United States establishes a well-settled civil right to be free from an unconstitutional search.

500.    At no time did Plaintiffs behave in a manner that would provide any legal justification for the above-described invasion of their privacy.

72

501.   The DPPA establishes that obtaining an individual's Private Data without a legitimate purpose constitutes an illegal search under the meaning of the Fourth Amendment as well as a violation of their substantive due process right to privacy under the Fourteenth Amendment.

502.   The DPPA, among other things, such as the plain language of the Constitution, the various court decisions interpreting the Constitution and the traditions of our country establish that an individual has a reasonable expectation of privacy in their driver's license information.

503.   Individual Defendants' viewing of Plaintiffs' personal information was unauthorized, unjustified, and excessive, and violates the Fourth and Fourteenth Amendments, the laws of the United States and the laws of the State of Minnesota.

504.   By the actions described above, each Individual Defendant, acting under color of state and federal law, violated and deprived Plaintiffs of their Fourth and Fourteenth Amendment Rights.

505.   Individual Defendants used the Entity Defendants' computers, passwords and passcodes to obtain Plaintiffs' Private Data.

506.    The acts of each Individual Defendant, acting under the color of state and federal law, constituted an invasion or repeated invasions of Plaintiffs' clearly-established privacy rights, guaranteed by the Bill of Rights and the Fourteenth Amendment to the United States Constitution, the laws of the United States, including the DPPA, and the laws of the State of Minnesota.

507.    The DPPA protects and codifies an individual right to privacy in a person's Private Data, thereby prohibiting unauthorized accessing of all persons' information, including Plaintiffs' information.

508.    Each individual law-enforcement and other government personnel, acting under color of state and federal law, knew that his or her actions violated and deprived Plaintiffs of their clearly established statutory rights under the DPPA.

509.    Each Individual Defendant deprived Plaintiffs of their federal statutory rights and civil rights maliciously or by acting with reckless disregard for whether Plaintiffs' rights would be violated by his or her actions.

510.    Each Individual Defendant was deliberately indifferent to Plaintiffs' statutory and civil right to be free from illegal searches, invasions of privacy and the unauthorized accessing of their Private Data.

511.    As a direct and proximate result of the acts and omissions of the above-named Individual Defendants, Plaintiffs were damaged in an amount yet to determined, but in excess of $75,000.

512.    Punitive damages are available against Individual Defendants for their reckless and callous disregard for Plaintiffs' rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirement for punitive damages set forth in Minn. Stat. § 549.20.

513.    Plaintiffs are entitled to recovery of their costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

74

## COUNT III: VIOLATION OF 42 U.S.C. § 1983

*(Against Entity Defendants and Supervisor Defendants, including John, Jane and Entity Does, for violation of 42 U.S.C. § 1983)*

514.   Plaintiffs' reaffirm and reallege the allegations in Paragraphs 1 through Paragraph 513.

515.   Individual Defendants' numerous accesses of Plaintiffs' private information are not unique, but one example of how frequently such law-enforcement agencies and other governmental entities customarily violate the DPPA by accessing Private Data of persons without having any legitimate or permissible reason for doing so.

516.   Persons familiar with police departments and those involved in teaching supervisors how to train and hold accountable their subordinate law-enforcement personnel have been told by those supervisors that the unlawful and impermissible accessing of private information is among the most frequently committed wrongs by police, for which they are seldom if ever held accountable.

517.   Improper access of citizens' Private Data by Defendants for their own personal and private uses, obtained by accessing that information through the computerized information storage system kept by the State for official purposes only, is an official custom or practice well known to Defendant Supervisors and Commissioner Defendants.

518.   These customs and practices by Defendant Individuals are at variance with the written rules set down by the Entity Defendants, the DPS, and Commissioner Defendants, but these formal rules are widely and knowingly disregarded.

519.    Given Entity Defendants' failure to monitor and enforce their rules, the aforementioned customs and practices are attributable to the municipalities themselves, including the Entity Defendants herein.

520.    Defendant Entities and Defendant Supervisors of the law-enforcement personnel and other public employees accessing this information knew or should have known of this and other unlawful, improper, unjustified, and impermissible access to private information by law-enforcement personnel and other public employees.

521.    The prevalence of this custom, the lack of monitoring regarding these access practices and the failure to take action to stop or prevent these practices, demonstrate the state of mind of Defendant Supervisors and municipal officials of the Entity Defendants.

522.    These customs and practices further demonstrate Defendants' deliberate indifference to the federal statutory and constitutional rights of the citizens and persons, including Plaintiff, whose information has been wrongfully accessed.

523.    Defendant Entities are directly liable for the custom and practice of the widespread illegal access of citizens' Private Data.

524.    Supervisor Defendants, up to and including the chief police officers and sheriffs employed by each Entity Defendant, are liable in their individual capacity.

525.    Defendants' liability is due to their actual and constructive knowledge of this practice.

526.    Defendants' liability is also due to their failure to institute any process for monitoring and preventing it.

527.    Defendants' liability is also due to their deliberate indifference to the federal rights of those persons, including Plaintiffs, whose information has been and continues to be wrongfully accessed.

528.    In addition, Defendant Supervisors of the law-enforcement personnel and other public employees, up to and including the chief police officer in each of Defendant Entities, are liable in their individual capacities for the failure to train, monitor, supervise, and properly discipline the officers who are improperly and unlawfully accessing the Private Data of citizens, including Plaintiffs, without a proper, lawful, permissible, justifiable purpose for doing so.

529.    This pattern of failure to train, monitor, supervise, and discipline demonstrates the state of mind of these Defendant Supervisors and a deliberate indifference to the rights of the citizens and others whose information has been so widely accessed, including Plaintiffs.

530.    The federal rights of the citizens, including Plaintiffs, whose information was improperly accessed, are held in light regard by many if not most of the Defendant Supervisors and by the Defendant Entities themselves.

531.    Defendants' lack of concern evidences their deliberate indifference both to the problem of the unauthorized access and to the impact of the unauthorized access on the federal rights of the citizens, including Plaintiffs, who would often be unaware of that access.

532.   It is yet unknown whether a system has been established by the Entity Defendants and Supervisor Defendants to monitor the regular access of the DPS Databases by personnel.

533.   It is yet unknown whether any attempt has been made by Entity Defendants and Supervisor Defendants to provide redress and assurance to the persons, including Plaintiffs, whose DVS information has been wrongfully accessed by the Individual Defendants named in this Complaint, or by other personnel in the municipalities named in this Complaint.

534.   As a direct and proximate result of the acts and omissions of the above-named Defendant Entities and Defendant Supervisors, Plaintiffs have endured and continue to endure mental suffering, and have been damaged in an amount yet to be determined and of a continuing nature, but in an amount in excess of $75,000.

535.   Punitive damages are available against Defendant Supervisors for their reckless and callous disregard for Plaintiffs' rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements set forth in Minn. Stat. § 549.20.

536.   Plaintiffs are entitled to recovery of their costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT IV: VIOLATION OF 42 U.S.C. § 1983

### *(Against Commissioner Defendants and DPS Does)*

537.   Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 536.

538.   As DPS Commissioners, Campion and Dohman, along DPS Does, were and are responsible for creating, maintaining, and providing access to the database that included Plaintiffs' Private Data.

539.   Defendant Commissioners and DPS Does also had the ability to determine if unauthorized access was being made and to prevent such unauthorized access to the database, including of Plaintiffs' Private Data, and have the ongoing duty to prevent such unauthorized accesses.

540.   Defendant Commissioners and DPS Does failed to utilize any due care to ensure that the disclosed information was being used only for permissible purposes.

541.   Commissioner Defendants and DPS Does failed to prevent unauthorized access to the database, including Plaintiffs' Private Data.

542.   The actions of Commissioner Defendants and DPS Does, as alleged, violate the rights of Plaintiffs under the Fourth and Fourteenth Amendments to the United States Constitution and under the DPPA.

543.   On information and belief, Commissioner Defendants, and DPS Does created or oversaw the creation and maintenance of a database and system that was supposed to prevent unauthorized access to Private Data.

544.   From 2003, Commissioner Defendants and DPS Does allowed unauthorized access of Jennifer's Private Data about 466 times.

545.   From 2006, Commissioner Defendants and DPS Does allowed unauthorized access of Jamie's Private Data about 34 times.

546.   On information and belief, Commissioner Defendants' and DPS Does' efforts have been insufficient to prevent future unauthorized access of Plaintiffs' and other individuals' private, personal information.

547.   Commissioner Defendants and DPS Does have sanctioned the constitutional violations by the Individual Defendants through their failure to remedy the policy, custom and practice of officers' and employees' unfettered and unauthorized access to the database.

548.   Commissioner Defendants and DPS Does have been negligent in supervising subordinates responsible for implementing a law-enforcement database that prevents unauthorized access to private, personal information.

549.   On information and belief, Commissioner Defendants and DPS Does failed to monitor and prevent unauthorized access to private, personal information even though they knew or should have known that such unconstitutional acts were occurring.

550.   Commissioner Defendants and DPS Does, acting under the color of state law, were deliberately indifferent to Plaintiffs' constitutionally-recognized and federal statutory rights to be free from illegal searches, invasions of privacy and the unauthorized accessing of their Private Data.

551.   Commissioner Defendants and DPS Does failed to implement properly Minnesota's policy to protect the private, personal information of its citizens with drivers' licenses.

552.   Commissioner Defendants and DPS Does are jointly liable for the use, disclosure, or access of Plaintiffs' Private Data for each Individual Defendants' access.

553.    As a direct and proximate result of the acts and omissions of Commissioner Defendants and DPS Does, Plaintiffs were forced to endure physical and mental suffering, and was thereby damaged in an amount yet to determined, but in an amount in excess of $75,000.

554.    Punitive damages are available against Commissioner Defendants and DPS Does for their reckless and callous disregard for Plaintiffs'' rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements set forth in Minn. Stat. § 549.20.

555.    Plaintiffs are entitled to recovery of their costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT V: COMMON LAW INVASION OF PRIVACY

*(Against All Defendants)*

556.    Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 555.

557.    By improperly obtaining Plaintiffs' private personal information for impermissible reasons, Defendants intentionally intruded upon the solitude or seclusion of Plaintiffs' private affairs and concerns.

558.    Defendants' intrusions would be highly offensive to a reasonable person.

559.    Defendants' intrusions caused Plaintiffs to suffer severe emotional distress and physical harm.

560. Defendants' intrusions were intended to cause Plaintiffs to suffer severe emotional distress and physical harm, and were made with either actual or legal malice, or with reckless disregard of her rights and her privacy.

561. Plaintiffs are entitled to tort damages for Defendants' invasion of privacy.

**JURY DEMAND**

562. Plaintiffs demand a jury trial as to all issues of fact herein properly triable to a jury under any statute or under common law.

WHEREFORE, Jennifer Heglund and Jamie Heglund pray for judgment against the Defendants as follows:

1. A money judgment against all Defendants for liquidated, actual and compensatory damages in an amount in excess of seventy five thousand ($75,000) dollars and punitive damages in an amount to be determined by the jury, together with their costs, including reasonable attorney fees, under 42 U.S.C. § 1988, the DPPA, and other applicable laws, and prejudgment interest;

2. Actual damages, punitive damages, attorneys' fees and other litigation costs and such other preliminary and equitable relief as the court determines to be appropriate under 18 U.S.C. § 2724(b);

3. Liquidated damages of at least $2,500 for each violation of the DPPA under 18 U.S.C. § 2721(b)(1);

4. An injunction, permanently enjoining all Defendants from viewing Plaintiffs' private information in violation of the DPPA, unless necessary for law enforcement purposes;

5.     An injunction, permanently and prospectively requiring Defendants to establish and implement all effective monitoring and investigative procedures to end this practice, discover and suspend permanently all accessing privileges to the violators; and to provide full disclosure to all potential claimants of the entities and persons who have violated their rights under the DPPA and the Constitution; and,

6.     For such other and further relief as this Court deems just and equitable.

**SAPIENTIA LAW GROUP PLLC**

Dated:  January 31, 2014

s/ Jonathan A. Strauss
Jonathan A. Strauss (#0279602)
Lorenz F. Fett (#196769)
Sonia Miller-Van Oort (#278087)
Kenn H. Fukuda (#0389301)
12 South Sixth Street, Suite 1242
Minneapolis, MN  55402
(612) 756-7100, Fax: 612-756-7101
jons@sapientialaw.com
larryf@sapientialaw.com
soniamv@sapientialaw.com
kennf@sapientialaw.com

***ATTORNEY FOR PLAINTIFFS***
***JENNIFER HEGLUND AND JAMIE***
***HEGLUND***