# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Jennifer Rae Heglund and
Jamie Lee Heglund,

        Plaintiffs,

    v.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 14-296 ADM/LIB

Aitkin County; City of Aitkin; City of Babbitt; City of Biwabik; City of Breitung; City of Chisholm; City of Cloquet; Cook County; City of Cook; Crow Wing County; City of Deer River; Douglas County; City of Duluth; City of Ely; City of Emily; City of Eveleth; City of Floodwood; City of Forest Lake; City of Gilbert; City of Grand Rapids; Hennepin County; City of Hermantown; City of Hibbing; City of Hill City; City of Hoyt Lakes; City of International Falls; Itasca County; City of Keewatin; Lake County; City of Leech Lake; City of Maple Grove; City of Minneapolis; City of Nashwauk; Norman County; City of Orono; Pine County; Ramsey County; City of Roseau; City of Sartell; Scott County; Sherburne County; City of St. James; St. Louis County; City of St. Paul; City of Two Harbors; City of Virginia; Washington County; Winona County; Frank Scherf, acting in his individual capacity as the Assistant Chief of the Grand Rapids Police Department; William Evans, acting in his individual capacity as a Deputy of the St. Louis County Sheriff's Office; Kevin Friebe, acting in his individual capacity as a Sergeant of the St. Louis County Sheriff's Office; Eric Hanegmon, acting in his individual capacity as a Deputy of the St. Louis County Sheriff's Office; David Lovaas, acting in his individual capacity as a Deputy of the St. Louis County Sheriff's

Office; Diane McComesky, acting in her individual capacity as an employee of St. Louis County; Linda Smith, acting in her individual capacity as an employee of the St. Louis County Sheriff's Office; Wayne Toewe, acting in his individual capacity as a Deputy of the St. Louis County Sheriff's Office; Kenneth Weis, acting in his individual capacity as a Deputy of the St. Louis County Sheriff's Office; Roberta Nyland; Michael Campion, in his individual capacity as the Commissioner of the Department of Public Safety; Ramona Dohman, in her individual capacity as the Commissioner of the Department of Public Safety; John and Jane Does (1 - 600) acting in their individual capacity as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies; Department of Public Safety Does (1-30) acting in their individual capacity as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; and Entity Does (1-100) including cities, counties, municipalities, and other entities sited in Minnesota,

          Defendants.

_____

Sonia L. Miller-Van Oort, Esq., and Jonathan A. Strauss, Esq., Sapientia Law Group, Minneapolis, MN, on behalf of Plaintiffs.

Susan M. Tindal, Esq., Iverson Reuvers Condon, Bloomington, MN, on behalf of Defendants City of Grand Rapids and Frank Scherf.

_____

## I. INTRODUCTION

On March 24, 2016, the undersigned United States District Judge heard oral argument on Defendants City of Grand Rapids ("Grand Rapids") and Frank Scherf's (collectively, the

"Defendants") Motion for Summary Judgment [Docket No. 202]. Plaintiffs Jennifer Rae Heglund and Jamie Lee Heglund (collectively, the "Plaintiffs") oppose the motion. For the reasons set forth below, Defendants' motion is granted.

## II.  BACKGROUND

This action arises from allegedly unlawful accesses of Plaintiffs' driver's license information from 2003–2013. Jennifer Heglund ("Jennifer")[1] is a former law enforcement officer who, between 1996 and 2012, worked for the Biwabik Police Department, the Hoyt Lakes Police Department, the Eveleth Police Department, and the St. Louis County Sheriff's Department. Jennifer Heglund Decl. [Docket No. 170] ¶¶ 2–6. Prior to her current marriage to Jamie Heglund ("Jamie"), Jennifer was married to a Minnesota State Trooper until their divorce in 2005. Id. ¶¶ 7–8. Jennifer avers her ex-husband has harassed Jamie on multiple occasions and Jennifer is concerned he has obtained both her and Jamie's private information. Id. ¶¶ 9-10.

In 2013, Plaintiffs contacted the Minnesota Department of Public Safety ("DPS") and requested an audit to determine if their private information had been accessed through the Minnesota Driver and Vehicle Services Division database (the "DVS Database"). Id. ¶¶ 16–17. The audit revealed that between 2003 and 2013, Jennifer's personal information had been accessed 446 times. Id. ¶¶ 17, 19, Ex. 3. The audit further revealed that between 2006 and 2013, Jamie's information had been accessed 34 times. Am. Compl. [Docket No. 185] at 3. Plaintiffs aver that the accesses were initiated by name, as opposed to license plate number, and that the individual defendants accessing the information did not have a permissible law enforcement purpose legally justifying their access. Jennifer Heglund Decl. ¶¶ 13–14, 16, 23; Jamie Heglund

---

[1] Since Plaintiffs have the same last name, first names will be used to distinguish them.

Decl. [Docket No. 169] ¶¶ 10–11, 13.  The accesses were initiated from the northern part of Minnesota, in and around the cities and counties where Jennifer worked.  See Jennifer Heglund Decl. Ex. 3.

On January 31, 2014, Plaintiffs filed this lawsuit alleging violations of the federal Driver's Privacy Protection Act, 18 U.S.C. § 2721, et seq.  ("DPPA" or "the Act"), 42 U.S.C. § 1983, and common law invasion of privacy against all defendants.  See Compl. [Docket No. 1] ¶¶ 473–561.  The original Complaint named as defendants nearly three dozen Minnesota cities; over one dozen Minnesota counties; the current and former Commissioner of the DPS; 30 Department of Public Safety Does; 600 John and Jane Does; and 100 Doe entities, including cities, counties, and municipalities.  See generally Compl.  Plaintiffs named the Doe defendants because at the time the original Complaint was filed Plaintiffs did not know the actual identities of the proper parties.  Tindal Aff. [Docket No. 206] Ex. 3 ("Jennifer Heglund Dep.") at 106:1–10.

On July 22, 2014, the Court issued an Order [Docket No. 132], amended on September 5, 2014 [Docket No. 138], dismissing Plaintiffs' DPPA claims against multiple cities and counties on statute of limitations grounds for accesses or "lookups" that occurred more than four years before the filing of the January 31, 2104 Complaint.  See Heglund v. Aitkin Cty., No. 14-296, 2014 WL 4414821, at *3 (D. Minn. Sept. 5, 2014) ("Dismissal Order").  In addition to the time-barred claims, the Court dismissed Plaintiffs' DPPA claims against the former and current DPS Commissioners, as well as the invasion of privacy and § 1983 claims against all defendants.  See id. at *6-7.

As a result of the Dismissal Order, the only remaining defendants were St. Louis County

and the Cities of Grand Rapids, Virginia, and Hibbing.  Id. at *3, *7–8.  Plaintiffs stipulated to the dismissal of the City of Hibbing in February 2015 [Docket No. 157] and the City of Virginia in March 2015 [Docket No. 181] and have settled their claims with St. Louis County.  Pls.' Mem. Opp'n Summ. J. [Docket No. 208] at 8 n.4.  Therefore, the only remaining lookup at issue in this case is an access of Jennifer's data by the City of Grand Rapids Police Department on March 25, 2010.

On October 14, 2014, Plaintiffs served written discovery on the Defendant municipalities to learn the identities of those who had obtained Jennifer's driver's license information.  Strauss Aff. [Docket No.168] ¶ 2.  On December 1, 2014, Grand Rapids disclosed in its discovery responses that the access by the Grand Rapids Police Department on March 25, 2010 was made by then Grand Rapids Assistant Chief of Police Frank Scherf.  Id. ¶¶ 3–4, Ex. 1.

Jennifer was one of ten individuals Scherf looked up in the DVS database from March 24, 2010 to March 25, 2010.  Tindal Aff. Ex. 1 ("Scherf Dep.) at 76:10–13; Ex. 2.  There are no police records or reports documenting the reason Scherf accessed Jennifer's data.  Scherf Dep. 62:1–63:8.  Scherf claims he does not know Jennifer, and although he does not recall why he accessed her information, he maintains he did not access her information "for personal reasons or out of personal curiosity."  Scherf Aff. [Docket No.161] ¶ 2.  Scherf recognizes the name of Jennifer's former husband but does not recall ever meeting him and does not know what he looks like.  Scherf Dep. at 56:12–57:3.  While working at the Itasca Sheriff's Department in Grand Rapids, Scherf occasionally saw a trooper who was a good friend of Jennifer's ex-husband.  Id. at 58:4–11; Jennifer Heglund Dep. at 112.  Scherf did not know that the trooper was friends with Jennifer's former husband and does not recall the trooper ever discussing Jennifer or her ex-

husband. Scherf Dep. at 72:14–73:5.

In February 2015, Grand Rapids moved for early summary judgment on the basis that Plaintiffs had adduced no evidence showing that Scherf's access was unlawful. Plaintiffs opposed the motion, arguing summary judgment was premature because they had not had an opportunity to conduct any discovery about Scherf. Plaintiffs argued that they had noticed the deposition of Scherf and that the deposition might uncover facts to show that Scherf's access was unlawful. The Court denied Grand Rapids' early summary judgment motion to allow Plaintiffs to proceed with Scherf's deposition. Mem. Op. & Order, May 22, 2015 [Docket No. 192] ("Summary Judgment Order") at 8–9. In denying summary judgment, the Court noted that it was "highly unlikely that deposing Scherf w[ould] bear fruit in light of his statement claiming he cannot remember the specific reasons why he accessed Jennifer's information in a single minute some five years ago." Id. at 9. The Court further stated that "if Scherf's deposition fails to raise facts to rebut Scherf's assertion that the lookup was not in violation of the DPPA, Grand Rapids may renew its summary judgment motion at that time." Id.

On April 21, 2015, Heglund filed an Amended Complaint that substituted Scherf for a Doe defendant.[2] The Amended Complaint also replaced other Doe defendants with the names of individual defendants identified in an audit produced by DPS on January 23, 2015. See Strauss Aff. ¶ 5. The DPS produced the audit in response to a subpoena served by Plaintiffs on December 30, 2014. See id.; Stipulation [Docket No. 151] ¶ 1.

---

[2] The Amended Complaint continues to include defendants and claims that were previously dismissed by the Court. Plaintiffs recognize that these defendants and claims have been previously dismissed and will not be further litigated in this case, but have included them in the Amended Complaint to preserve their appellate rights. Am. Compl. 7 n.1.

6

Scherf and Grand Rapids now move for summary judgment, arguing Plaintiffs' DPPA claim fails based on the statute of limitations, qualified immunity, unclean hands, the doctrine of *in pari delicto*, the absence of an injury to confer Article III standing, and the rule of lenity.

### III. DISCUSSION

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment shall issue "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in its favor. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation omitted). To withstand a motion for summary judgment, a plaintiff "must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. Moody v. St. Charles Cty., 23 F.3d 1410, 1412 (8th Cir. 1994) (internal quotation and alterations omitted).

**B. Relation Back Under Fed. R. Civ. P. 15(c)(1)(C)**

Defendants argue that the DPPA claims against Scherf are time-barred because the Amended Complaint does not relate back to the date of the Original Complaint. DPPA claims

are subject to the four-year statute of limitations in 28 U.S.C. § 1658(a), which begins to run when the alleged violations occurred. <u>McDonough v. Anoka Cty.</u>, 799 F.3d 931, 939–43 (8th Cir. 2015). There is no dispute that the alleged illegal conduct occurred on March 25, 2010. The Amended Complaint was filed April 21, 2015. Therefore, if the Amended Complaint does not relate back to the date of the original Complaint, the claims against Scherf would be time-barred because the alleged violations occurred before April 21, 2011.

Federal Rule of Civil Procedure 15(c) provides than an amended pleading will relate back to the date of an original pleading when:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (I) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). The purpose of relation back is "to balance the interests of the defendant protected by the statue of limitations with the preference . . . for resolving disputes on their merits." <u>Krupski v. Costa Crociere S. p. A.</u>, 560 U.S. 538, 550 (2010).

The parties dispute whether the requirement of Rule 15(c)(1)(C)(ii)—that the added party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity"—has been satisfied. Defendants argue that

naming a Doe defendant is not a "mistake" as to the proper party's identity. Rather, naming a Doe defendant is a representation by the plaintiff that it lacks knowledge of the defendant's name. Plaintiffs disagree, arguing that this interpretation of "mistake" is too narrow and that a mistake includes a plaintiff's inability to identify a defendant due to lack of knowledge.

In interpreting what constitutes a mistake under Rule 15(c)(1)(C), the United States Supreme Court has stated:

> A mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief." Black's Law Dictionary 1092 (9th ed.2009); see also Webster's Third New International Dictionary 1446 (2002) (defining "mistake" as "a misunderstanding of the meaning or implication of something"; "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention"; "an erroneous belief"; or "a state of mind not in accordance with the facts").

Krupski, 560 U.S. at 548-49. Under this definition, a plaintiff's naming of a Doe defendant is not a mistake because a plaintiff's decision to name a Doe defendant is not an error, misconception, misunderstanding, erroneous belief, or wrong action. Rather, a plaintiff names a Doe defendant because the plaintiff does not yet know the identity of the defendant; it is a placeholder.

The vast majority of Circuit Courts to have considered this issue hold that a plaintiff's lack of knowledge of the proper party to be sued is not a "mistake concerning the party's identity" under Rule 15(c) and thus relation back is not permitted. See Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 470 (2d Cir. 1995) ("Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties . . . , but the failure to identify individual defendants when the plaintiff knows that such defendants must be named

9

cannot be characterized as a mistake."); Locklear v. Bergman & Beving AB, 457 F.3d 363, 368 (4th Cir. 2006) ("We therefore reaffirm that [Rule 15(c)(1)(C)(ii)] is not satisfied when the claimed mistake consists of a lack of knowledge of the proper party to be sued."); Jacobsen v. Osborne, 133 F.3d 315, 321 (5th Cir. 1998) ("[T]here was no 'mistake' in identifying the correct defendant; rather, the problem was not being able to identify that defendant."); Force v. City of Memphis, 101 F.3d 702 (6th Cir. 1996) ("[T]he mistake provision of Rule 15(c)[(1)(C)(ii)] requires, as its language suggests, a mistake or misnomer in the name of the original defendant, and . . . a plaintiff's lack of knowledge of the names of the 'unknown officers' is not such a mistake or misnomer."); Worthington v. Wilson, 8 F.3d 1253, 1256 (7th Cir. 1993) (stating Rule 15(c) "does not permit relation back where . . . there is a lack of knowledge of the proper party"); Garrett v. Fleming, 362 F.3d 692, 696 (10th Cir. 2004) ("[A] plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party' within the meaning of Rule 15(c)[(1)(C)(ii)]."). As here, many of these cases involved instances where the original complaint named a Doe law enforcement officer or prison official and the plaintiff later attempted to replace the Doe defendant with the name of the defendant once the defendant's identity was learned through discovery. See, e.g., Barrow, 66 F.3d at 467; Jacobsen, 133 F.3d at 321; Force, 101 F.3d at 702; Worthington, 8 F.3d at 1254–55; Garrett, 362 F.3d at 694.

Although the Eighth Circuit has not directly ruled on the issue of whether an amended complaint identifying a defendant by name will relate back to an earlier complaint filed against a Doe defendant, language from Foulk v. Charrier, 262 F.3d 687 (8th Cir. 2001), suggests that the Eighth Circuit would adopt the majority view. In Foulk, the plaintiff argued that his fifth amended complaint, which was the first to identify the corrections officer by name, related back

10

to the date of the fourth amended complaint naming a John Doe corrections officer. Id. at 696.[3] The plaintiff's relation back argument had not been presented to the district court, and so the Eighth Circuit declined to consider it on the merits. Id. at 696. Nevertheless the Eighth Circuit stated:

> The issue of whether an amended complaint identifying a defendant by name will "relate back" to a previously filed complaint against a "John Doe" defendant has typically arisen in the context of statute of limitations issues. Such an amendment ordinarily will not be treated as relating back to the prior pleading, unless certain conditions set forth in Fed. R. Civ. P. 15(c) are satisfied.

Id. (emphasis in original).

The Third Circuit is the only Circuit Court to hold that the naming of a Doe defendant satisfies the "but for a mistake" requirement of Rule 15(c). See Varlack v. SWC Carribbean, Inc., 550 F.2d 171, 174–75 (3d Cir. 1977). However, Varlack did not include any discussion of why the lack of knowledge as to the proper defendant constitutes a mistake concerning the party's identity. Additionally, Varlack was decided before the 1991 Advisory Committee Note which clarifies that under Rule 15(c), "a complaint may be amended at any time to correct a formal defect such as a misnomer or misidentification." Fed. R. Civ. P. 15(c)(3) advisory committee's note to 1991 amendment (emphasis added). The naming of a Doe defendant based on the lack of knowledge of the defendant's identity is not a misnomer or misidentification.

---

[3] Foulk was a § 1983 action filed by a former inmate alleging excessive force by a corrections officer in violation of the Eighth Amendment. 262 F.3d at 691. In seeking relation back of his fifth amended complaint, the plaintiff was attempting to avoid application of the Prison Litigation Reform Act of 1996 ("PLRA"), which was enacted after the plaintiff's fourth amended complaint had been filed. Id. at 693–95. The PLRA requires a plaintiff to exhaust all administrative remedies before filing a § 1983 action based on prison conditions. See 42 U.S.C. § 1997e(a).

Plaintiffs argue that interpreting the "but for a mistake" requirement of Rule 15(c) to exclude the naming of a Doe defendant unfairly disadvantages plaintiffs who do not know the names of the individuals who have wronged them. Plaintiffs reason that if a plaintiff's amended Doe complaint is not permitted to relate back, then the statute of limitations is effectively shorter for that plaintiff than for those who do know the names of their defendants at the time they file their lawsuit. This concern was raised by the Third Circuit in <u>Singletary v. Pennsylvania Department of Corrections</u>, which includes a lengthy footnote analyzing the perceived "lack of fairness to plaintiffs with 'John Doe' complaints that currently inheres in the other Circuits' interpretation of the Rule." 266 F.3d 186, 201 n.5 (3d Cir. 2001). In the footnote, the Third Circuit proposed that the "but for a mistake" provision of Rule 15(c) be amended to allow relation back when "the party to be brought in by the amendment . . . knew or should have known that [the action would have been brought against it], but for a mistake <u>or lack of information</u> concerning the identity of the proper party . . . ." <u>Id.</u> (citing Edward H. Cooper, "Rule 15(c)(3) Puzzles" at 3–5 (Nov. 1999) (emphasis in original)). In the concluding paragraph of the <u>Singletary</u> opinion, the Third Circuit directed the Clerk "to send copies of this opinion to the Chairman and Reporter of the Judicial Conference Advisory Committee on Civil Rules and the Standing Committee on Practice and Procedure, calling attention to footnote 5." <u>Id.</u> at 203. However, in the 15 years since <u>Singletary</u> was decided, the suggested amendment to Rule 15(c) has not been implemented. Therefore, this Court rejects an interpretation of Rule 15(c) that implicitly includes this suggested language.

Plaintiffs also argue that even within circuits that hold the naming of a Doe defendant does not fit within the meaning of mistake, district courts have allowed relation back where the

12

defense fails to timely respond to a plaintiff's requests for information about a Doe defendant's identity. See Pls.' Mem. Opp'n Summ. J. at 27 (citing Byrd v. Abate, 964 F. Supp. 140, 145–46 (S.D.N.Y. 1997) ("To hold that Rule 15(c) does not permit relation back in such circumstances would permit defense counsel to eliminate claims against any John Doe defendant merely by resisting discovery requests until the statute of limitations has ended.")). Plaintiffs contend that relation back should be permitted here because Defendants delayed the discovery process by filing a motion to dismiss and an early motion for summary judgment. However, Defendants' motion to dismiss, which was filed jointly with over two dozen other defendants, was not a delay tactic. Rather, the motion was meritorious in dismissing a multitude of time-barred DPPA claims as well as Plaintiffs' § 1983 and invasion of privacy claims. Moreover, Defendants' motion for early summary judgment did not impact Plaintiffs' ability to timely discover Scherf's identity earlier. By the time the early summary judgment motion was filed in February 2015, the four-year statute of limitations period governing Scherf's March 25, 2010 lookup had been expired for almost a year. Thus, an exception to the "mistake" requirement of Rule 15(c)(1)(C)(ii) is not warranted under the circumstances of this case.

Based on the plain text of Rule 15(c) as interpreted by the majority of Circuit Courts, the Court finds that Plaintiffs naming "John Does from the City of Grand Rapids" was not a mistake concerning the proper party's identity. Therefore, Rule 15(c) is not satisfied and the Amended Complaint does not relate back to the original Complaint. As a result, the DPPA claim based on Scherf's March 25, 2010 access is time-barred.

**C. Qualified Immunity**

Even if the claim against Scherf had been timely, it would nevertheless fail because

13

Scherf is entitled to qualified immunity. Qualified immunity shields an officer from liability and the burdens of litigation unless his conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982); Mallak v. City of Baxter, — F.3d —, No. 15-1815, 2016 WL 2909235, at *2 (8th Cir. May 19, 2016). "Because this entitlement constitutes an immunity from suit rather than merely a defense to liability, the Supreme Court 'repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (alteration in original)).

To overcome qualified immunity, a plaintiff must show: (1) a violation of a federal statutory or constitutional right, and (2) that the right was "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). "When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated a clearly established right." Bishop v. Glazier, 723 F.3d 957, 961 (8th Cir. 2013).

Here, Plaintiffs have shown a clearly established right because the DPPA makes clear that accessing private driver's license information without a permissible purpose violates the law. See Mallak v. Aitkin Cty., 9 F. Supp. 3d 1046, 1063–64 (D. Minn. 2014). However, Plaintiffs have failed to produce sufficient evidence to create a genuine issue of material fact regarding whether Scherf violated this right.

To establish a DPPA violation, a plaintiff must prove that a defendant: (1) knowingly (2) obtained, disclosed, or used personal information (3) from a motor vehicle record (4) for a purpose not permitted. McDonough, 799 F.3d at 945 (citing 18 U.S.C. § 2724(a)). The Act lists

14

14 permissible purposes for disclosing personal information, the first being: "For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1). This exception "'provides law enforcement agencies with latitude in receiving and disseminating this personal information,' when it is done 'for the purpose of deterring or preventing crime or other legitimate law enforcement functions.'" Senne v. Vill. of Palatine, Ill., 695 F.3d 597, 607–08 (quoting 139 Cong. Rec. S15,962 (daily ed. Nov. 17, 1993) (statement of Sen. Thomas Harken)). The DPPA's legislative history reflects law enforcement's "legitimate need for information contained in state records and the authority to use that information to effectuate the purposes identified in the Act without fear of liability." Id. at 608.

The Eighth Circuit has identified at least five types of accesses by law enforcement that may indicate a plaintiff's data was accessed for an impermissible purpose rather than a law enforcement function: (1) accesses by a law enforcement officer who has or had a relationship with the plaintiff; (2) accesses corresponding with a significant event; (3) accesses on the same day as or within a few hours of accesses by other, unrelated entities; (4) multiple late night accesses; or (5) a history of frequent suspicious accesses by a law enforcement officer or entity. See Mallak, 2016 WL 2909235, at *3; McDonough, 799 F.3d at 950. If these types of suspicious accesses are absent and no other facts exist to explain a law enforcement officer's interest in a plaintiff's personal information, a DPPA claim will fail. See, e.g., McDonough, 799 F.3d at 952 (dismissing DPPA claims against seven law enforcement agencies that "did not have a history of frequent suspicious access, and Law Enforcement Does did not . . . engage in multiple late-night

15

accesses or participate in any suspicious access patterns through these agencies").

Here, the record lacks evidence of suspicious access patterns or other facts that would suggest Scherf accessed Jennifer's records for an impermissible purpose. It is undisputed that the challenged access occurred on a workday at 11:32 a.m. and was less than one minute in duration. There is no evidence that the timing of this brief, isolated access corresponded with a significant event. Nor is there evidence that Scherf's accesses occurred on the same day or within hours of other unrelated entities, or that Scherf or the Grand Rapids Police department had a history of frequent suspicious accesses. Moreover, Scherf did not know Jennifer and had never met her former husband. Although Jennifer has adduced evidence that Scherf worked in the same building as a trooper who was a good friend of Jennifer's ex-husband, this attenuated personal connection does not cause the March 25, 2010 access to become suspicious.

Not only does the evidence offered by Plaintiffs lack indicia of suspicious access, Plaintiffs have had a full opportunity to depose Scherf and his supervisor about the circumstances of the lookup and have uncovered no facts to show that the access was motivated out of personal interest or some other impermissible purpose.

Plaintiffs argue that Scherf's access was likely the result of personal interest or curiosity because: it was made by searching her name rather than a license plate number; Jennifer had committed no crimes and was not involved in any investigations or incidents that would justify the access; the reason for the access was not documented; and Jennifer was "likely" at work in St. Louis County at the time and "does not believe that she was in Itasca County that day." Jennifer Heglund Decl. ¶¶ 22-23. However, Jennifer admits that as a law enforcement officer she did not prepare a written record for every lookup that she performed, and that the lack of a written record

16

regarding a lookup does not necessarily mean that it was done for an impermissible purpose. Jennifer Heglund Dep. 15:16–16:3. Moreover, Jennifer's assertions that she was "likely" in St. Louis County and "does not believe" she was in Itasca County on the day of the access March 25, 2010 are too speculative to assist in determining the purpose for Scherf's access.

Plaintiffs focus on a DPS Report showing that Scherf viewed four photos from Jennifer's current and past driver's licenses when he accessed her information. Plaintiffs intimate that one of the reasons Scherf viewed historical photos was Jennifer's significant weight loss in 2005. However, to conclude that Scherf accessed Jennifer's records for this purpose would require one to speculate that: (1) someone told Scherf about Jennifer's weight loss even though Scherf does not know her and even though the weight loss had occurred five years earlier, and (2) Scherf found this information interesting enough to access Jennifer's DVS records. Additionally, although Plaintiffs argue there is no law enforcement purpose to be served by viewing historical photos, the pages on which the photos were displayed also included basic demographic information that is useful to law enforcement, such as address, date of birth, driver's license status, and all associated driver's license numbers. Second Tindal Aff. [Docket No. 211] Ex. C ("Jacobson Dep.") at 140:25–141:8, 261:8–263:15; Ex. K ("Jacobson Dep. Ex. 22").

Plaintiffs have failed to adduce "sufficient probative evidence that would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." Moody, 23 F.3d at 1412. Because the evidence does not create a genuine issue of fact regarding whether Scherf violated the DPPA, Plaintiffs cannot overcome qualified immunity. Thus, even if Plaintiffs' DPPA claim

had been timely, qualified immunity applies and the claim is dismissed.[4]

Having concluded that dismissal is appropriate on at least two independent grounds, the Court does not reach Defendants' additional arguments for dismissal.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. City of Grand Rapids and Frank Scherf's Motion for Summary Judgment [Docket No. 202] is **GRANTED**.

2. As all defendants have now been dismissed from this case, the case is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

Dated: June 1, 2016

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

---

[4] While this matter was under advisement, the Eighth Circuit issued an opinion in Mallak v. City of Baxter, 2016 WL 2909235, which also involved DPPA claims against law enforcement officers. In Mallak, the district court denied qualified immunity for four law enforcement defendants who had moved for early summary judgment. Three of the officers were personally acquainted with the plaintiff, and the fourth officer had looked up the plaintiff's information on the same day the plaintiff's child went on life support. The district court held that granting early summary judgment was premature because a genuine issue of material fact remained as to whether the accesses were for a permissible purpose, and also because the plaintiff had not had an opportunity to conduct full discovery or take the officers' depositions. Id. at *2. The Eighth Circuit dismissed the appeal for lack of jurisdiction because the officers' entitlement to immunity hinged on a factual dispute rather than a question of law. Id. at *4.

After the Mallak opinion was issued, Plaintiffs requested permission to submit a letter brief addressing its relevance to this case. See Letter [Docket No. 213]. Further briefing was unnecessary, however, because Mallak is distinguishable in at least two significant respects. First, Plaintiffs here have had a full opportunity to conduct discovery and have deposed Scherf and his supervisor. Second, Plaintiffs have not offered evidence of a personal connection between Scherf and Jennifer or evidence of a suspicious access pattern such as a significant event related to Jennifer that corresponds with Scherf's access.